NOT FOR PUBLICATION
CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
:
ERNESTINA GOMEZ, :
:
      Plaintiff, :   Civ. No. 05-2378 (JAP)
:
  v. :
:  **OPINION**
JO ANNE B. BARNHART, :
COMMISSIONER OF SOCIAL SECURITY, :
:
      Defendant. :
_____:

APPEARANCES:

James Langton, Esq.
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065
    *Attorneys for Plaintiff*

Christopher Christie
United States Attorney
Karen Fiszer
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    *Attorneys for Defendant*

PISANO, District Judge.

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g) and Section 1383(c)(3). Plaintiff Ernestina Gomez ("Plaintiff" or "Gomez") seeks review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB"). The Court has jurisdiction to review this matter under § 405(g) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSIB is supported by substantial evidence. For the reasons stated below, the Court remands this matter to the ALJ for further proceedings consistent with this opinion.

I.    BACKGROUND

Gomez is a 57-year old woman with a second grade education who lives in Jersey City, New Jersey. She was born on November 7, 1949, in the Dominican Republic. Her past work experience includes employment as a picker/packer in a video factory and a clothing factory, and a laundry worker. Plaintiff was laid off from her job as a video packer in approximately May of 2001. After she was laid off from her job, she did not seek a new job and collected unemployment insurance benefits for the next seven months. At the time of her application for DIB and SSIB, Gomez remained unemployed.

Plaintiff initially alleged that she became disabled on October 26, 2000. However, at the hearing before the ALJ, the parties moved to amend the application to reflect a revised alleged onset date of January 1, 2002.

A.    **Procedural History**

On January 23, 2002, Gomez applied for DIB and SSIB. The Social Security Administration denied Plaintiff's claim both initially and upon reconsideration. She filed a timely request for a hearing on January 17, 2003. On December 3, 2003, a hearing was held

before Administrative Law Judge ("ALJ") Marilyn Mann Faulkner ("Faulkner"). Gomez personally appeared and gave testimony at the hearing. A Spanish-language interpreter was also present at the hearing to assistant Gomez with her testimony. On April 27, 2004, ALJ Faulkner issued a written decision denying Gomez's claim. ALJ Faulkner made the following findings in her decision:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's a [sic] depressive order and arthritis are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.
>
> 5. The [ALJ] finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the following residual functional capacity: light work involving simple and repetitive tasks.
>
> 7. The claimant's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity. (20 C.F.R. §§ 404.1565 and 416.965).
>
> 8. The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work as a picker/packer or a laundry worker.
>
> 9. The claimant was not under a "disability" as defined in the Act and regulations, at any time through the date of the decision (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

(AR at 22-23.) Plaintiff requested that the Appeals Council review the ALJ's decision. The

Appeals Council denied that request on March 10, 2005. The Appeals Council "found no reason under [their] rules to review the Administrative Law Judge's decision." (AR at 6.)

### B. Medical Evidence[1]

#### 1. Medical Records from Christ Hospital

Gomez's medical records indicate that she presented to the emergency room of Christ Hospital on January 2, 2002 reporting of three days of left knee pain and swelling. She denied any previous problems with her knee, and according to the hospital record, she had no prior history of arthritis. She did, however, have a previous history of diabetes. A physical examination revealed moderate effusion and moderate tenderness of the knee. Gomez experienced some discomfort upon full extension of the knee. The records indicate that there was no instability upon varus or valgus stress and no distal neurovascular deficit. X-rays of Gomez's left knee showed no evidence of any fracture or dislocation, but confirmed the presence of a joint space effusion. The hospital administered Gomez Toradol and a set of crutches, prescribed her Naprosyn, and discharged her.

Gomez returned to the emergency room of Christ Hospital on February 21, 2002, complaining of pain in her right fifth finger of three days' duration. The physician determined that her condition was related to an infectious etiology and diagnosed her as having toxic synovitis of the right fifth finger. Gomez was administered intravenous Rocephin and insulin.

#### 2. Dr. Saleem Mahmood

Gomez saw her treating physician, Dr. Saleem Mahmood, on January 4, 2002. Dr.

---

[1] A more detailed summary of Plaintiff's medical history can be found in the April 27, 2004 Decision by Administrative Law Judge Marilyn Mann Faulkner.

Mahmood indicated on a prescription pad that Gomez was indefinitely disabled due to painful peripheral diabetic neuropathy and left knee arthritis.

### 3. Dr. Abaid Choudry

On May 22, 2002, Dr. Abaid Choudry of Parkside Medical Center performed a consultative exam on Gomez. Dr. Choudry assessed the following medical problems: untreated hypertension, Type 2 diabetes of unclear progression, a possible history of degenerative joint disease verses inflammatory arthritis, and probable anxiety disorder and possible depression. Dr. Choudry noted that he considered Gomez to be an extremely poor historian, and that it was unclear where most of her physical complaints had an organic basis. According to Dr. Choudry's records, Gomez had multiple complaints but was unable to give any adequate details regarding her complaints. Dr. Choudry described Plaintiff as being obese, anxious-looking, with no acute distress. She walked slowly, but with essentially a normal gait. Dr. Choudry observed that Gomez had no motor or sensory deficits throughout her body and that she had no cyanosis, clubbing or edema of her extremities. Examination of her heart and lungs was within normal limits.

### 4. Dr. Champa Bid

Dr. Champa Bid conducted a consultive exam on Gomez on July 9, 2002. Dr. Bid found that Gomez's ability to give information was very poor and noted that she was extremely vague in describing her symptoms. According to the doctor's report, a musculoskeletal examination revealed normal findings, except for some diminished ranges of motion in her right shoulder. She was able to perform both gross and fine manipulative functions, and walk unassisted at a reasonable pace. She could not walk upon her heels and toes and was only partially able to squat.

Neurologically, she was alert and fully oriented. Her memory was good and her cranial nerves were intact. Her speech and cerebellar functions were normal and her sensations and deep tendon reflexes were intact. X-rays taken in conjunction with Dr. Bid's evaluation of Gomez showed normal findings in both of her knees and in her right hand. X-rays were not taken of her left hand.

### 5. Dr. Aryeh Klahr

Dr. Aryeh Klahr conducted a consultative psychiatric examination on Gomez on December 11, 2002. According to Dr. Klahr's report, Gomez was not taking any psychiatric medications, and there was no history of any psychiatric hospitalizations or suicide attempts. Dr. Klahr indicated that Gomez's responses during the examination were inconsistent. She was alert and fully oriented, and the doctor described her attention and concentration as fair. She was able to do serial threes without difficulty, and was able to recall three items immediately and after five minutes, but then began to indicate that she could not remember things. After several repetitions, however, she was able to recall several numbers forward and five numbers on reverse digit span. Dr. Klahr noted that Gomez's inability to remember might have been due to inattention or may have possibly been volitional.

Dr. Klahr diagnosed Gomez with a depressive order, not otherwise specified ("NOS") and concluded that Gomez should be able to follow and understand simple instructions and should be able to perform simple tasks in a structured environment with a sympathetic supervisor. Dr. Klahr opined that Gomez may have some difficulty with more complex instructions in a competitive work environment.

### 6. Jersey City Medical Center Community Mental Health Clinic

Gomez sought counseling at the Jersey City Medical Center Mental Health Clinic (the "clinic") beginning in September 2002. All mental status findings were essentially normal, including a neat appearance, appropriate speech and tone, intact memory and sensorium, and good judgment and insight. Further, her mood was calm and her affect was normal. She denied hallucinations, delusions, phobias and obsessions. She was started on a trial of Trazodone and Zoloft in December, 2002. The final clinic record dates from September 2003 and indicates that Gomez was non-compliant with her counseling. At her hearing on December 3, 2003 before the ALJ, Gomez testified that she stopped going to the clinic because she felt that the therapist and the doctor were laughing at her.

## II.   DISCUSSION

### A.   Standard of Review

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision. *See* 42 U.S.C. 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence, therefore, may be slightly less than a preponderance. *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As such, "a court must take into account

whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987). As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Establishing a Disability Under the Act

"In order to establish a disability under the Social Security Act, [a plaintiff] must demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (internal quotations and citations omitted). Further, a claimant must demonstrate that the severity of his impairment(s) renders him "not only unable to do his previous work" but also, "considering his age, education, and work experience," unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 404.1520, the Commissioner employs the following five-step sequential analysis to evaluate each case and determine whether a claimant is "disabled" or "not disabled":

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f).

### C.    The Court Remands Gomez's Claims to the ALJ

Analyzing the evidence under the five-part framework, the ALJ concluded that Gomez was not disabled and that she had the residual functional capacity to perform her past relevant work as a picker/packer or a laundry worker. Plaintiff asserts several agreements in favor of reversing the Commissioner's determination. First, Plaintiff argues that the ALJ contradicted Plaintiff's treating physician without contradictory evidence. Second, Plaintiff argues that the ALJ offered no evidentiary background, support or explanation for her RFC determination.

9

Third, Plaintiff argues that the ALJ's finding that Plaintiff could perform past work is unsupported by the evidence. The Commissioner responds that the ALJ's decision is supported by substantial evidence.

### 1. The ALJ's Rejection of the Opinion of Plaintiff's Treating Physician

Plaintiff first argues that the ALJ eliminated the opinion of Plaintiff's treating physician, Dr. Mahmood, without contradictory evidence. Dr. Mahmood had opined that Gomez was indefinitely disabled due to painful peripheral diabetic neuropathy and left-knee arthritis. The ALJ reasoned that Dr. Mahmood's opinion could not be accorded significant probative weight because Dr. Mahmood did not cite any clinical findings upon which to base his conclusion. The ALJ stated, "[i]n fact, while Dr. Mahmood cites left-knee arthritis as one of the claimant's disabling conditions, x-rays obtained just two days before at Christ Hospital and six months later in conjunction with Dr. Bid's evaluation both show no evidence of any arthritic process." (AR at 22.)

An ALJ can only reject the opinion of a treating physician if he or she explains on the record the reasons for doing so. *See Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989). The ALJ must provide a clear and satisfactory basis for rejecting such an opinion. *See Cotter*, 642 F.2d at 704. In this case, the ALJ did explain her reasons for rejecting Dr. Mahmood's opinion. The Court finds, however, that the ALJ did not provide a clear and satisfactory basis for rejecting Dr. Mahmood's opinion. One of the reasons the ALJ cited for rejecting Dr. Mahmood's opinion was because x-rays obtained two days before at Christ Hospital did not show any evidence of any arthritic process. However, the record indicates that x-rays obtained two days before at Christ Hospital <u>did</u> show evidence of arthritic process, or "joint effusion." (AR at 142.) The record

also indicates that Dr. Choudry, who performed a consultative examination on Gomez, assessed a possible history of degenerative disease verses inflammatory arthritis.

In light of the x-rays taken at Christ Hospital that appear to show evidence of arthritis, the Court finds that this case must be remanded to the ALJ to provide further analysis regarding her reasons for rejecting Dr. Mahmood's opinion. The ALJ must also explain whether this further analysis changes her conclusion that Gomez is not disabled. The Court notes that the ALJ has the final responsibility to determine whether a claimant is "disabled," as the opinion by a medical source that an individual is disabled is not controlling.

### 2. The ALJ's Residual Functional Capacity Determination

Plaintiff contends that the ALJ did not offer any evidentiary background, support, or explanation for her RFC determination. Specifically, Gomez argues that the ALJ did not provide an explanation in support of her finding that Plaintiff could perform the physical requirements of "light work." Gomez also argues that the ALJ omitted uncontradicted evidence that Gomez's psychiatric limitations preclude her from working in a competitive environment. The Court will address each argument in turn.

First, the Court rejects Plaintiff's argument that the ALJ did not offer evidentiary background, support, or explanation for her RFC determination that Plaintiff could perform the physical requirements of "light work."[2] Plaintiff argues that the ALJ simply recited the medical evidence and then announced her finding without engaging in a proper analysis. After reviewing the ALJ's decision, however, the Court is satisfied that the ALJ provided a proper analysis in

---

[2] The Court notes, however, that the ALJ must provide a clear explanation for rejecting Dr. Mahmood's opinion, as explained in Section II(C)(1) *supra*.

making her determination and did not merely recite the medical evidence.

The ALJ first noted that in making her assessment, she was obligated to consider all symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ further noted that she must consider any medical opinions which reflected judgments about the nature and severity of the impairments and resulting limitations.  Then, the ALJ evaluated the evidence before her.  As part of her analysis, the ALJ explained that every examining physician of record had commented that Gomez was a poor historian and that her clinical presentation differed substantially from her subjective complaints.  The ALJ also stated that although Gomez claimed that she was unable to lift or carry even five-pound objects, that both Dr. Choudry and Dr. Bid found that Gomez had no motor or sensory deficits throughout her body.  The ALJ also explained that Gomez was shown as possessing unimpaired fine and gross manipulation capabilities, and that by Gomez's own reporting, her pain level was less than moderate.  She noted that Gomez had been prescribed medications for her pain, but Gomez instead primarily relied on over-the-counter medications.  Regarding Gomez's credibility, the ALJ also pointed out that Gomez had admitted that after she was laid off from work in approximately May 2001, she collected unemployment insurance benefits for at least the next six months.  The ALJ explained that in order to collect unemployment insurance benefits, Gomez had to assert that she was capable of working.  The ALJ concluded that the law of probability weighed against the coincidence that Plaintiff became incapable of engaging in all manner of work activity at the same time that her unemployment benefits ceased.

The Court finds that the ALJ properly considered all of Gomez's symptoms and the

extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. She also properly considered the medical opinions which reflected judgments about the nature and severity of the impairments and resulting limitations in making her RFC determination. Therefore, with the exception of the ALJ's rejection of Dr. Mahmood's opinion, the Court finds that the ALJ provided a sufficient explanation in support of her finding that Plaintiff could perform the physical requirements of "light work."

The Court next turns to Gomez's argument that the ALJ omitted uncontradicted evidence that Plaintiff's psychiatric limitations preclude her from working in a competitive environment. Specifically, Plaintiff asserts that the Commissioner's own psychiatrist, Dr. Klahr, reported that Plaintiff could not work in a competitive environment. Plaintiff also argues that the ALJ omitted the findings of the Commissioner's review psychiatrists, which found moderate limitations in Plaintiff's abilities in several areas. The Court has reviewed the record and rejects Gomez's arguments. First, Dr. Klahr opined that from a psychiatric perspective, Gomez "is able to follow and understand simple instructions and should be able to perform simple tasks in a structured environment with a sympathetic supervisor. She may have some difficulty with more complex instructions in a competitive work environment." (AR at 215.) In reviewing this statement, it is apparent that Dr. Klahr felt that Gomez may have "some difficulty" working in a competitive environment with complex instructions, but not that it was impossible for Gomez to do so.

The Court also rejects Plaintiff's argument that it was improper for the ALJ to omit the findings of the Commissioner's review psychiatrists regarding Gomez's mental RFC. The psychiatrists found that Plaintiff was "moderately limited" with respect to nine delineated abilities, and found that Gomez was "not significantly limited" with respect to 11 delineated

abilities. (AR at 216.) The psychiatrists did not find that Gomez was "markedly limited" in any abilities. (AR at 216.) The Court finds that the ALJ did not err in excluding this report, as it does not appear that the report provides any evidence that Gomez cannot work in a competitive environment.

### 3. The ALJ's Determination that Plaintiff Could Perform Past Work

Plaintiff argues that the ALJ's finding that Plaintiff could perform past work is unsupported by the evidence. Specifically, Gomez contends that the ALJ failed to comply with the Commissioner's requirement for a "function by function" analysis of her past relevant work.

The Court finds that the ALJ completed the required "function by function" analysis. The regulations require the ALJ to describe an individuals's RFC in terms of specific work limitations on a "function by function" basis. 20 C.F.R. § 416.945. The ALJ found that Gomez had the RFC of light work because she could lift/carry objects weighing up to 20 pounds occasionally and 10 pounds frequently, and was capable of siting, standing and/or walking for six hours out of an eight hour work day. The ALJ also found that Gomez was limited to engaging in work involving simple and repetitive tasks.

After determining Gomez's RFC, the ALJ was required to determine whether, given her RFC, Gomez could return to her past relevant work. *See* 20 C.F.R. § 416.920. Social Security Ruling 82-61 specifically states that in making this determination, a claimant will be found to be "not disabled" if she retains the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See* S.S.R. 82-61, 1982 WL 31387 (1982).

The Court finds that the ALJ conducted the proper analysis in this case. The ALJ stated that by Gomez's own description, her positions as a picker/packer in video factory and clothing factory, and position as a laundry worker were performed within the parameters of light work. These positions did not require any technical knowledge or skills, the use or operation of any machinery, or the writing or completion of reports. Based on her review of the evidence and Plaintiff's testimony, the ALJ concluded that Gomez's former jobs entailed simple, repetitive-type duties, and that Plaintiff was capable of performing her past relevant work. The Court thus rejects Gomez's argument that this determination was unsupported by the evidence.

### III. CONCLUSION

For the reasons expressed above, the Court vacates and remands this case to the Commissioner for further proceedings consistent with this opinion. Specifically, this case is remanded to the ALJ for the limited purpose of articulating a clear explanation for rejecting the opinion of Dr. Mahmood, Gomez's treating physician. It is also necessary for the ALJ to explain whether this additional analysis changes her conclusion that Gomez is not disabled. Accordingly, this case is CLOSED. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: January 17, 2007